## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

DEAN MARIANI,

     Plaintiff,

v.                                                    Case No: 8:20-cv-2998-CEH-CPT

CHRISTOPHER NOCCO, JEFFREY
HARRINGTON, MICHAEL
FARRANTELLI, STACY JENKINS,
ED BECKMAN, CHRISTOPHER
NOCCO, JEFFREY HARRINGTON,
MICHAEL FARRANTELLI, STACY
JENKINS and ED BECKMAN,

     Defendants.

_____/

## O R D E R

     This matter comes before the Court upon Defendants' Dispositive Motion to Dismiss Plaintiff's Amended Complaint [Doc. 18], Plaintiff's Response in Opposition [Doc. 22], and the supplemental authority cited by Defendants [Docs. 25, 26, 27, 28].[1] In the motion, Defendants state that the Amended Complaint is a shotgun pleading, that the RICO claims fail to state a claim upon which relief may be granted, and that the constitutional claims fail to state a claim upon which relief may be granted. The Court, having considered the motion and being fully advised in the premises, will **GRANT** Defendants' Dispositive Motion to Dismiss Plaintiff's Amended Complaint.

---

[1] The supplemental authorities refer the Court to orders granting dismissal in other cases that were involved in the *Squitieri* Litigation.

I.    **BACKGROUND**[2]

Plaintiff, Dean Mariani, is a former employee of the Pasco County Sheriff's Office (PCSO). [Doc. 16 ¶ 7]. He was employed there from approximately July 1997 through June 2018 as a Lieutenant. *Id.* ¶ 24. Defendants were employees of the Pasco County Sheriff's Office at all times relevant to the claims raised in this action. *Id.* ¶¶ 8-12. Christopher Nocco served as sheriff, Jeffrey Harrington served as a colonel, Michael Farrantelli served as a captain, and Stacy Jenkins and Ed Beckman both served as a major. *Id.* Plaintiff alleges that Defendants—in their individual capacities—have engaged in a pattern and practice of "racketeering activity" in violation of the Federal Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* ("Federal RICO"), and Florida's Racketeering Statute, Chapter 895 *et seq.* (Florida "RICO") *Id.* ¶¶ 13-14.

Defendants' "criminal enterprise" involved targeting Plaintiff and others who would not exhibit undying loyalty to all operational demands of the PCSO. *Id.* ¶¶ 15-16. This included "clearly unlawful and unconstitutional treatment of various citizen targets, regardless of there being no probable cause or lawful basis for the targeting of said citizens, as well as any effort to identify and correct sexual harassment and other unlawful operational characteristics." *Id.* ¶ 16. In 2011, the PCSO implemented the "Intelligence Led- Policing" law enforcement policies and procedures (the ILP

---

[2] The following statement of facts is derived from Plaintiffs' Amended Complaint [Doc. 1-5], the allegations of which the Court must accept as true in ruling on the instant Motion to Dismiss. *See Linder v. Portocarrero*, 963 F.2d 332, 334 (11th Cir. 1992); *Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp. S.A.*, 711 F. 2d 989, 994 (11th Cir. 1983).

Program). *Id.* ¶ 17. The program is predicated on the belief that 6% of criminals commit 60% of crimes and targets those deemed to be "prolific offenders." *Id.* ¶¶ 17-19. It further criticizes "bureaucratic processes" that are the fundamental considerations of "probable cause" and the many other constitutional protections that apply to all citizens in a free society. *Id.* ¶ 20. Any resistance to the unconstitutional actions demanded by implementation of the ILP Program by Plaintiff would result in the swift application of the various tools used by Defendants, including abuse, intimidation, threatened or actual incarceration, extortion, defamation, and permanent damage to Plaintiff's ability to pursue alternative careers in law enforcement. *Id.* ¶¶ 21-22.

When Plaintiff did not cooperate with Defendants in enforcing the unconstitutional dimensions of the ILP Program against innocent citizens of Pasco County, Defendants—through their criminal enterprise—retaliated against him with baseless internal departmental investigations intended to ruin his career and prevent him from gaining employment with any other law enforcement agency. *Id.* ¶ 23. He was written up by Major Jenkins, Captain Farrantelli, and Major Beckman when he forwarded a memo to his captain regarding an inmate grievance that a deputy had punched him. *Id.* ¶¶ 25-27. He was also written up because as a lieutenant he did not issue a single personnel observation report to any of his subordinates. *Id.* ¶ 29. Sheriff Nocco, Colonel Harrington, Major Jenkins, and Captain Faranetlli collectively decided to demote Plaintiff from Lieutenant to Deputy. *Id.* ¶ 28. Plaintiff was forced

to resign by Defendants in approximately 2018, when they extorted him with the threat of taking his vacation and sick pay away and firing him if he refused to resign. *Id.* ¶ 30.

On June 20, 2019, Plaintiff joined a lawsuit along with nineteen other plaintiffs, that named forty-five defendants, including Sheriff Christopher Nocco and other top officials at the PCSO, which alleged that defendants engaged in a pattern of racketeering activity in violation of federal and Florida law. *See Squitieri v. Nocco et al*, Case No. 8:19-cv-00906-CEH-AAS, Doc. 7 ("*Squitieri* Litigation"). That lawsuit was initially filed on April 16, 2019 by Christopher J. Squitieri, John Horning, and Anthony Pearn, and assigned to the Undersigned. *Squitieri* Litigation, Doc. 1. On August 7, 2019, Plaintiffs filed a lengthy second amended complaint re-asserting their claim under the federal civil RICO Act and raising a new claim under Chapter 895, Florida Statutes, an inapplicable criminal RICO statute. *Id.*, Doc. 121. Defendants moved to dismiss the second amended complaint less than a week later. *Id.*, Doc. 131. During a hearing on that motion to dismiss, the Undersigned explained that the second amended complaint was "so poorly drafted" that it could not be assessed on the merits. *Id.*, Doc. 171 at 6:11-14. The Undersigned also explained step-by-step the deficiencies in Plaintiffs' pleading, orally granted-in-part the motion to dismiss, and directed Plaintiffs to file a third amended complaint that complied with the Federal Rules of Civil Procedure. *Id.*, Doc. 161. On April 1, 2020, Plaintiffs filed the third amended complaint. *Id.*, Doc. 169. Defendants moved to dismiss it on April 13, 2020. *Id.*, Doc. 170. After entering an order to show cause and considering Plaintiffs' response, the

4

Undersigned severed the various claims and ordered that they be pursued in separate actions. *Id.*, Doc. 189.

Plaintiff then filed this action on December 16, 2020.  [Doc. 1]. He amended his complaint on February 19, 2021. [Doc. 16]. The Amended Complaint alleges a claim for violations of federal and state racketeering statutes (Count I) and an alternative claim for constitutional violations committed by Defendants in their official capacities (Count II). Plaintiff presents numerous allegations in Count I. *Id.* ¶¶ 32-36. There, he alleges that Defendants—including Sheriff Nocco and Colonel Harrington through their instruction and guidance—violated the mail and wire fraud statutes as all documents and notices in relation to this investigation were transmitted either by mail or electronic means. *Id.* ¶ 33. Plaintiff also alleges that Defendants engaged in racketeering activity when threatening him to resign or face dismissal in relation to the fraudulent and unjust complaints filed against him. *Id.* ¶ 34. He further alleges that Defendants conspired to violate the theft or embezzlement from employee benefit plan provision of the federal and Florida RICO statutes. *Id.* ¶¶ 35-36.

In Count II, the alternative claim, Plaintiff alleges that to the extent Defendants carried out their acts and practices in their official capacities, they were being performed under color of state law and constitute state action. *Id.* ¶ 38. He further alleges that Defendants punished him for exercising his First Amendment rights and that Sheriff Nocco forced him to resign for the violations falsely alleged against him, and in doing so, took away a property right protected by the Constitution. *Id.* ¶¶ 40-41. The acts of Defendants allegedly abridged and restrained Plaintiff's rights to free

speech as guaranteed by the Florida and United States Constitution; constitute an impermissible "chilling effect" on constitutionally protected speech and expression; denied Plaintiff equal protection of the law; and constitute an unlawful and unauthorized taking of Plaintiff's job via forced resignation. *Id.* ¶ 41.

Defendants have moved to dismiss the Amended Complaint. [Doc. 18]. They first argue that the complaint is a shotgun pleading as it is replete with "conclusory, vague, and immaterial facts not connected to any particular cause of action" and otherwise fails to advise Defendants of the claims asserted against them. *Id.* at pp. 4-7. They also argue that further opportunities to replead are not required or warranted as Plaintiff has been afforded two opportunities to do so. *Id.* at p. 7. Next, Defendants present several reasons why the civil RICO claim fails. *Id.* at pp. 7-20. They argue that there is no private right of action under Florida's RICO statute; that Plaintiff lacks standing to pursue a RICO claim as the complaint fails to allege an injury, and termination of employment and associated lost wages is not a cognizable injury; that Plaintiff fails to plausibly allege that Defendants engaged in racketeering activity; and that they are entitled to qualified immunity. *Id.* at pp. 12-20. Lastly, Defendants argue that Count II, the constitutional claim fails because it is redundant; does not allege how Plaintiff's constitutional rights were infringed/implicated by Defendants' alleged conduct; the Fifth Amendment only protects against infringement by federal government actors; and fails to allege that his First Amendment rights were infringed by enforcement of a policy or custom of the Sheriff. *Id.* at pp. 21-22.

In response, Plaintiff contends that the complaint is not a shotgun pleading as it establishes specific and detailed allegations in each count and places each Defendant on notice of their violations. [Doc. 22 at p. 3]. He further contends that he is entitled to injunctive relief pursuant to the Florida RICO statute to correct the false internal reports. *Id.* at pp. 3-4. As to his standing, Plaintiff contends that his injuries to property—loss of his job, wages, retirement pay—are a direct cause of Defendants' violations of his rights through "predicate acts" and caused by Defendants' conspiracy to conceal and cover up these injuries by forcing him to resign, which was just one tactic used to harass and intimidate him. *Id.* at pp. 5-6. Plaintiff also addresses the sufficiency of his allegations as to the civil RICO claim, contending that he has established the required elements. *Id.* at pp. 6-12. Next, he contends that Defendants are not entitled to qualified immunity as there is no question that Defendants knew their conduct was unlawful because they were law enforcement officers violating the same federal and state criminal statutes that criminal defendants are arrested, convicted, and sent to federal and state prison for violating every day. *Id.* at pp. 12-13. Lastly, Plaintiff contends that there is no basis for dismissal of the constitutional claim and that the Fifth Amendment claim brought under the banner of the Fourteenth Amendment is constitutionally proper when the Defendants are state actors. *Id.* at p. 13.

## II.    LEGAL STANDARD

On a motion to dismiss for failure to state a claim on which relief can be granted pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure, the Court accepts as true

all the allegations in the complaint and construes them in the light most favorable to the plaintiff. *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 694 (11th Cir. 2016). However, legal conclusions "are not entitled to the assumption of truth" and "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *McArdle v. City of Ocala*, 418 F. Supp. 3d 1004, 1006 (M.D. Fla. 2019) (first quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009), then quoting *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003)). To survive a motion to dismiss, the complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Simpson v. Sanderson Farms, Inc.*, 744 F.3d 702, 708 (11th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). This standard is satisfied when the plaintiff pleads enough factual content to allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 556 U.S. at 678). By contrast, dismissal is appropriate when "no construction of the factual allegations will support the cause of action." *Glover v. Liggett Group, Inc.*, 459 F.3d 1305, 1308 (11th Cir. 2006) (quoting *Marshall Cty. Bd. Of Educ. v. Marshall Cty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993)).

Additionally, Rule 9(b) places more stringent pleading requirements on claims alleging fraud. Fed. R. Civ. P. 9(b). "[U]nder Rule 9(b) allegations of fraud must include facts as to time, place, and substance of the defendant's alleged fraud." *United States ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1308 (11th Cir. 2002) (citation and internal quotations omitted). A Plaintiff is thereby required to set forth

8

"the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them." *Hopper v. Solvay Pharm., Inc.*, 588 F.3d 1318, 1324 (11th Cir. 2009) (internal quotation marks omitted) (citing *Clausen*, 290 F.3d at 1310). Failure to satisfy the particularity requirement under Rule 9(b) amounts to failure to state a claim under Rule 12(b)(6). *See, e.g., Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1012 (11th Cir. 2005).

## III.   DISCUSSION

### A.   Shotgun Pleading

Defendants first argue that the Amended Complaint is a shotgun pleading. A shotgun pleading is any pleading which "fail[s] to one degree or another . . . to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland v. Palm Beach Cnty Sheriff's Office*, 792 F. 3d 1313, 1323 (11th Cir. 2015). The Eleventh Circuit has identified four general types of shotgun pleadings. *Id.* at 1322–23. They include: "(1) those in which 'each count adopts the allegations of all preceding counts;' (2) those that do not re-allege all preceding counts but are 'replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action'; (3) those that do not separate each cause of action or claim for relief into a different count; and (4) those that assert multiple claims against multiple defendants without specifying which applies to which." *Yeyille v. Miami Dade Cty. Pub. Sch.*, 643 F. App'x 882, 884 (11th Cir. 2016) (citing *Weiland*, 792 F.3d at 1321–23). Ultimately, "[t]he unifying characteristic of all types of shotgun

pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland*, 792 F.3d at 1323; *see also Lampkin-Asam v. Volusia Cnty. Sch. Bd.*, 261 F. App'x 274, 277 (11th Cir. 2008) ("A complaint that fails to articulate claims with sufficient clarity to allow the defendant to frame a responsive pleading constitutes a 'shotgun pleading.'"). When faced with a shotgun pleading, a court should strike the complaint and instruct the plaintiff to file a more definite statement. *See Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 984 (11th Cir. 2008) (collecting cases), *abrogated on other grounds by Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

Plaintiff's Amended Complaint is a shotgun pleading. For one, it is filled with conclusory allegations. As an example, Plaintiff alleges that Defendants have "engaged in a pattern and practice" of racketeering activity through tampering with a witness, victim, or an informant as well as retaliating against a witness, victim, or an informant. [Doc. 16 ¶ 13]. However, there are no factual allegations supporting these conclusory allegations. Second, Plaintiff fails to separate each claim for relief into a different count. Plaintiff lumps together multiple claims in a single count. To illustrate this, Count I alleges federal RICO violations premised on mail fraud, wire fraud, and extortion. *Id.* ¶¶ 33-34. It goes on to assert a RICO violation for theft or embezzlement from employee benefit plan in violation of both federal and Florida law. *Id.* ¶¶ 34-35. Plaintiff also seeks relief pursuant to both federal, First and Fifth Amendments, and Florida law in Count II. *Id.* ¶¶ 39, 41(a), 41(d). This is an improper form for seeking relief. A properly drafted pleading "will present each claim for relief in a separate

10

count." *Marlborough Holdings Grp., Ltd. V. Azimut-Benetti, Spa, Platinum Yacht Collection No. Two, Inc.,* 505 F. App'x 899, 907 (11th Cir. 2013) (quoting *Anderson v. Dist. Bd. Of Trs. Of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996)). As such, the Amended Complaint is subject to dismissal as a shotgun pleading.

**B.    Failure to State a Claim**

Defendants have presented additional grounds for dismissal of the Amended Complaint. These relate to whether a private right of action exists for a particular claim, whether Plaintiff has standing, whether the claims are sufficient, as well as whether qualified immunity applies.

i.    No Private Right of Action For Damages Under Florida's Criminal RICO Statute

"The Florida criminal RICO statute allows a private plaintiff to bring a civil suit for equitable relief only." *Johnson Enterprises of Jacksonville, Inc. v. FPL Grp., Inc.*, 162 F.3d 1290, 1302 n.18 (11th Cir. 1998) (citing Fla. Stat. ch. 895.05(6) (1997)). Defendants argue that as a former employee, Plaintiff does not have standing to pursue injunctive relief. [Doc. 18 at p. 8]. In response, Plaintiff contends that the injunctive relief requested is the correction of the false internal affairs reports that continue to damage his reputation and ability to find a job in law enforcement. [Doc. 22 at pp. 3-4]. While Plaintiff alleges that he was written up for two corrective investigative reports, the Amended Complaint does not include a request for injunctive relief. In

fact, both counts seek monetary relief *only*. As such, the Amended Complaint is subject to dismissal as to the Florida RICO statute.[3]

    ii.   <u>No Standing to Pursue Civil RICO claim</u>

Defendants argue that the Amended Complaint fails to identify Plaintiff's asserted injury, which must be shown in order to establish standing. [Doc. 18 at pp. 9-10]. They further argue that the termination of one's employment relationship and associated loss wages is not a cognizable RICO injury. *Id.* at p. 10. Additionally, they argue that Plaintiff has not alleged a cognizable injury as a result of a RICO violation. *Id.* at pp. 10-11. "The standing provision of RICO provides that '[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue....' " *Bivens Gardens Off. Bldg., Inc. v. Barnett Banks of Fla., Inc.*, 140 F.3d 898, 906 (11th Cir. 1998) (citing 18 U.S.C. § 1964(c)). "[P]laintiffs lack standing to bring a RICO claim unless their injuries were proximately caused by the RICO violation." *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1349 (11th Cir. 2016) (citing *Bivens*, 140 F.3d at 906). *See also Liquidation Comm'n of Banco Intercontinental, S.A. v. Renta*, 530 F.3d 1339, 1350 (11th Cir. 2008) ("RICO standing is really just a heightened proximate causation standard[.]").

---

[3] Defendants argue that Plaintiff, as a former employee, does not have standing to pursue injunctive relief. They cite *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 364 (2011), and note that in that case, the Supreme Court acknowledged that plaintiffs no longer employed by the defendant "lack[ed] standing to seek injunctive or declaratory relief against its employment practices." While the Amended Complaint raises issues as to Defendant's policy and practices, Plaintiff's response is that injunctive relief is needed to remedy false reports that continue to harm him. But Plaintiff does not seek injunctive relief in the Amended Complaint.

Plaintiff points to allegations regarding his termination, vacation and sick pay, and harm to his career to support an injury proximately caused by the RICO violation. [Doc. 22 at pp. 4-6; Doc. 16 ¶¶ 23, 30]. However, Plaintiff insufficiently alleges that these injuries occurred by reason of the RICO violation, as opposed to his decision to resign rather than be fired. As such, Plaintiff has not alleged a cognizable RICO injury as a result of a predicate act, as defined in the federal RICO Act. Even if Plaintiff can establish standing, as discussed below, Counts I and II of the Amended Complaint fail to state a claim upon which relief may be granted.

### iii.   Plaintiff Fails to State a *Prima Facie* Federal Civil RICO Claim

In Count I, Plaintiff asserts a private action against Defendants under the federal RICO Act, which provides a private right of action for treble damages to "[a]ny person injured in his business or property by reason of a violation" of the Act's criminal prohibitions. 18 U.S.C. § 1964(c); *Bridge v. Phoenix Bond & Indem. Co.* 553 U.S. 639, 641. As the Eleventh Circuit recently explained:

> A private plaintiff suing under the civil provisions of RICO must plausibly allege six elements: that the defendants (1) operated or managed (2) an enterprise (3) through a pattern (4) of racketeering activity that included at least two predicate acts of racketeering, which (5) caused (6) injury to the business or property of the plaintiff.

*Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1211 (11th Cir. 2020) (citing *Ray*, 836 F.3d at 1348). A complaint will be dismissed if it fails to plead any one of these elements. *Id.*

Defendants next argue that Plaintiff fails to plead the requisite elements of a RICO claim. [Doc. 18 at p. 12]. They contend that the Amended Complaint is devoid of any

allegations that would establish two of the predicate acts—mail fraud, wire fraud, extortion, and embezzlement from an employee benefit plan;[4] is devoid of any allegations regarding a pattern and practice of racketeering activity; and alleges actions taken within the course and scope of Defendant's employment with the PSCO. [Doc. 18 at p. 12-20. The Court agrees.

    a. *Mail Fraud and Wire Fraud—18 U.S.C. §§ 1341 and 1343*

The predicate acts of mail fraud and wire fraud have not been pleaded with particularity as required by Rule 9(b). "Civil RICO claims, which are essentially a certain breed of fraud claims, must be pled with an increased level of specificity." *Ambrosia Coal & Const. Co. v. Pages Morales*, 482 F.3d 1309, 1316 (11th Cir. 2007); *Cisneros*, 972 F.3d at 1216 (applying Rule 9(b) to mail and wire fraud).

> A plaintiff must prove the following elements to establish liability under the federal mail and wire fraud statutes: (1) that defendants knowingly devised or participated in a scheme to defraud plaintiffs, (2) that they did so willingly with an intent to defraud, and (3) that the defendants used the U.S. mails or the interstate wires for the purpose of executing the scheme.

*Langford v. Rite Aid of Alabama, Inc.*, 231 F.3d 1308, 1312 (11th Cir. 2000). To satisfy the heightened pleading standard, such claims "must allege: (1) the precise statements, documents, or misrepresentations made; (2) the time and place of and person

---

[4] Plaintiff also generally alleges, without more facts, that Defendants engaged in racketeering activity through witness tampering in violation of 18 U.S.C. § 1512(b) and retaliation against a witness, victim, or an informant, in violation of 18 U.S.C. §1513(e). Defendant has not sought dismissal of these purported predicate acts, but the Court notes that the Amended Complaint pleads insufficient facts as to these predicate acts.

responsible for the statement; (3) the content and manner in which the statements misled the Plaintiffs; and (4) what the Defendants gained by the alleged fraud." *Ambrosia Coal & Const. Co*, 482 F.3d at 1316–17.

There is no such specificity in the Amended Complaint. Importantly, there is no allegation as to why the internal departmental investigations are baseless or any detail as to the corrective investigative reports. There is also no detail as to when the alleged acts occurred. As a result, Plaintiff has not sufficiently alleged that Defendants engaged in mail fraud or wire fraud.

b. *Extortion—18 U.S.C. § 1961(1)(A)*

"[I]n order for a state extortion offense to qualify as a predicate act under the federal RICO statute, the conduct must be capable of being generically classified as extortionate: that is, 'obtaining something of value from another with his consent induced by the wrongful use of force, fear or threats.' " *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1088 (11th Cir. 2004).[5] The parties agree that under Florida law, extortion includes malicious threats to: (1) accuse another of a crime or offense; (2) threaten

---

[5] The complaint also alleges "racketeering activity" under 18 U.S.C. § 1961(1) including extortion. [Doc. 16 ¶ 36]. The Court notes that § 1961(1) (B) states that racketeering activity means any act which is indictable under any of the following provisions of Title 18, United States Code, including section 1952, relating to interference with commerce, robbery or extortion. To state the predicate act of extortion under § 1961(1) (B), a plaintiff must show a violation of the Hobbs Act, 18 U.S.C. § 1951. *Crawford's Auto Ctr., Inc. v. State Farm Mut. Auto. Ins. Co.*, 945 F.3d 1150, 1159 (11th Cir. 2019) (citing *Raney*, 370 F.3d at 1087–88 (11th Cir. 2004)). "The Hobbs Act defines extortion as 'the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right.' '[E]xtortion requires an intent to obtain that which in justice and equity the party is not entitled to receive.' " *Id.* (first quoting § 1951(b)(2), then quoting *United States v. Enmons*, 410 U.S. 396, 406 n.16, 93 S. Ct. 1007, 1013 n.16, 35 L.Ed.2d 379 (1973)). Defendants do not present any arguments as to a Hobbs Act claim.

injury to the person, property or reputation of another; and (3) threaten to expose another to disgrace, expose a secret of another, or impute any deformity/lack of chastity to another. Fla. Stat. § 836.05.

Defendants argue that the Amended Complaint is devoid of any allegations which would meet the required elements of an extortion claim and that "[t]here is nothing unlawful, much less extortionate, about presenting an employee with the choice of resigning or facing disciplinary action." [Doc. 18 at pp. 14-15]. Plaintiff contends that his allegation that "Defendants . . . forced [him] to resign by extorting him with the threat of taking his vacation and sick pay away and firing him if he refused to resign" satisfies the pleading requirement. The Amended Complaint does not allege a threat to Plaintiff's property, reputation, or person. The Amended Complaint does not allege that Plaintiff had a property interest in his job.  *See, e.g., McRae v. Douglas*, 644 So. 2d 1368, 1372 (Fla. 5th DCA 1994) (noting that there must be a legitimate expectation of continued employment to establish property interests not created by the United States Constitution) Extortion by threat of harm to reputation or person has also not been alleged. Mariani simply mischaracterizes as extortion his decision to resign and receive a payout of his vacation/ sick leave. [Doc. 16 ¶ 30]. There is nothing unlawful, much less extortionate, about the choice presented to Mariani—a choice that employees often confront when facing disciplinary action. *See e.g., Rademakers v. Scott*, 350 F. App'x 408, 411-12 (11th Cir. 2009) ("Coercion does not exist when the employee faces what she considers to be limited and disagreeable

choices regarding her employment."). As such, Plaintiff has not alleged that one of the predicate acts engaged in by Defendants was extortion.

c.  *Embezzlement or Theft of Welfare/ Pension Benefit Plan—18 U.S.C. § 664*

Plaintiff alleges that "the Defendants, in their individual capacity, conspired to violate 18 U.S. Code § 664. – Theft or embezzlement from employee benefit plan." [Doc. 16 ¶ 35]. This provision applies to any employee benefit plan subject to ERISA. The statute provides:

> Any person who embezzles, steals, or unlawfully and willfully abstracts or converts to his own use or to the use of another, any of the moneys, funds, securities, premiums, credits, property, or other assets of any employee welfare benefit plan or employee pension benefit plan, or of any fund connected therewith, shall be fined under this title, or imprisoned not more than five years, or both.

> As used in this section, the term "any employee welfare benefit plan or employee pension benefit plan" means any employee benefit plan subject to any provision of title I of the Employee Retirement Income Security Act of 1974.

18 U.S.C. § 664. Defendant argues that the complaint "does not contain a single allegation that would indicate any [D]efendant engaged in theft or embezzlement of assets of an employee benefit plan." [Doc. 18 at p. 15]. The Court agrees. Beyond the statutory language, there are no allegations in the Amended Complaint regarding theft of assets of an employee benefit plan. Plaintiff therefore fails to sufficiently plead a claim for theft or embezzlement of assets of an employee benefit plan.[6]

---

[6] The Court notes Defendants' argument that "the Sheriff's Office participates in the Florida Retirement System ('FRS')—a governmental plan exempt from ERISA." [Doc. 18 at p. 15].

### d. *Pattern of Racketeering Activity*

Defendant also argues that the Amended Complaint is devoid of any allegations regarding a pattern and practice of racketeering activity. [Doc. 18 at pp. 16-17]. "To successfully allege a pattern of racketeering activity, plaintiffs must charge that: (1) the defendants committed two or more predicate acts within a ten-year time span; (2) the predicate acts were related to one another; and (3) the predicate acts demonstrated criminal conduct of a *continuing* nature." *Jackson v. BellSouth Telecommunications*, 372 F.3d 1250, 1264 (11th Cir. 2004). As the discussion above makes clear, Plaintiff has not sufficiently alleged two or more predicate acts. This also precludes a finding that there is a relationship between predicate acts. The Court also agrees with Defendant that Plaintiff has not alleged criminal conduct of a continuing nature. Count I is therefore due to be dismissed as Plaintiff has failed to state a claim upon which relief can be granted.

### e. *Qualified Immunity*

Defendants argue that qualified immunity applies as Plaintiff appears to challenge his write ups and ultimate resignation and his allegations plainly contemplate actions taken within the course and scope of Defendants' employment with the PCSO. *Id.* at pp. 17-19. Additionally, they argue that the claim is based on alleged violations of federal criminal statutes which are plainly inapplicable and there is no authority that would have placed them on notice that they could be individually liable under federal or RICO statutes. *Id.* at pp. 19-20.

18

"Qualified immunity shields government officials from liability for civil damages for torts committed while performing discretionary duties unless their conduct violates a clearly established statutory or constitutional right." *Stephens v. DeGiovanni*, 852 F.3d 1298, 1314 (11th Cir. 2017) (quoting *Hadley v. Gutierrez*, 526 F.3d 1324, 1329 (11th Cir. 2008)). When qualified immunity applies, it is 'an immunity from suit rather than a mere defense to liability and the doctrine shields all but the plainly incompetent or those who knowingly violate the law. *Crocker v. Beatty*, 995 F.3d 1232, 1239 (11th Cir. 2021). In evaluating whether qualified immunity applies, a court determines (1) whether the facts alleged make out a violation of a constitutional right and (2) whether that right was "clearly established" at the time of the alleged misconduct. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

In assessing whether Defendants were engaged in a discretionary act, "[w]e ask whether the government employee was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize."). *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004). Defendants provide argument and citation to legal authority that a defendant acts with discretionary authority when considering an employee's conduct and administering discipline or when terminating an employee. *See,e.g., Sims v. Metro. Dade Cty.*, 972 F.2d 1230, 1236 (11th Cir. 1992) (holding that supervisory employees acted within the scope of discretionary authority in imposing three-day suspension); *Stanley v. City of Dalton, Ga.*, 219 F.3d 1280, 1285 (11th Cir. 2000) ("It is undisputed that Chadwick acted within his discretionary authority in terminating Stanley."). Plaintiff does not dispute

this. The enforcement of operational demands and exercise of discipline on noncompliant officers falls within Defendants' job-related powers and responsibilities. *See O'Rourke v. Hayes*, 378 F.3d 1201, 1205 (11th Cir. 2004). As such, the Amended Complaint alleges that Defendants engaged in a discretionary act.

However, the Complaint does not allege a violation of a constitutional right that was "clearly established" at the time of the alleged misconduct. *Pearson*, 555 U.S. at 232. The Amended Complaint alleges that Defendants, all of them lumped together, targeted those employees who would not exhibit undying loyalty to all operational demands of Defendants, including clearly unlawful and unconstitutional treatment of various citizen targets of the PCSO, regardless of there being no probable cause or lawful basis for the targeting of said citizens. [Doc. 16 ¶ 16]. There is no allegation as to what specific constitutional right of Plaintiff is impugned by Defendants' action.[7] "If no constitutional violation is established, then the defendants prevail, and 'there is no necessity for further inquiries concerning qualified immunity.' " *Holmes v. Kucynda*, 321 F.3d 1069, 1077 (11th Cir. 2003) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)). Even then, Plaintiffs have not established that the supposed right was clearly established at the time it was violated by defendants. For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable

---

[7] The Constitutional claims arising under "the Fourth, Fifth, and Fourteenth Amendment to the United States Constitution" are "alleged against Defendants in their official capacities"—which is raised in Count II. [Doc. 16 ¶ 2]. Additionally, the allegation that Defendants violated Plaintiff's right to free speech is presented only as to Count II. *Id.* ¶ 41.

official would understand that what he is doing violates that right." *Corbitt v. Vickers*,

929 F.3d 1304, 1311 (11th Cir. 2019).

> A plaintiff can show that the contours of a right were clearly established in one of three ways. First, a plaintiff can point to a "materially similar case that has already been decided." . . . Second, a plaintiff can point to a "a broader, clearly established principle that should control the novel facts of the situation." . . . And third, a plaintiff can show that "the conduct involved in the case may so obviously violate the Constitution that prior case law is unnecessary." . . .

*Wade v. United States*, 13 F.4th 1217, 1226 (11th Cir. 2021), *cert. denied sub nom. Wade,*

*Charles v. Lewis, Gordon*, No. 21-1141, 2022 WL 892132 (U.S. Mar. 28, 2022). Plaintiff

has not cited any materially similar case, nor has he pointed to a broader clearly

established principle. Additionally, he does not allege conduct that so obviously

violates the Constitution that prior law is unnecessary.   As Plaintiff has not

demonstrated that he suffered harm to a clearly established constitutional right,

qualified immunity shields Defendants from being sued based on the allegations here.

    iv.   <u>Plaintiff Fails to State a Constitutional Claim Upon Which Relief May Be Granted</u>

Count II alleges an alternative claim for "constitutional violations committed

by Defendants in their official capacities." [Doc. 16 ¶¶ 37-42]. Plaintiff alleges that

Defendants punished him for exercising his First Amendment rights and that Sheriff

Nocco forced him to resign for the violations falsely alleged against him, and in doing

so, took away a property right protected by the Constitution. *Id.* ¶¶ 40-41. The acts of

Defendants allegedly abridged and restrained Plaintiffs' rights to free speech as

guaranteed by the Florida and United States Constitution; constitutes an impermissible "chilling effect" on constitutionally protected speech and expression; denied Plaintiff equal protection of the law; and constitute an unlawful and unauthorized taking of Plaintiff's job via forced resignation. *Id.* ¶ 41. In seeking dismissal of this claim, Defendants first argue that it is redundant as to each Defendant except Sheriff Nocco. [Doc. 18 at p. 21]. In addition, they argue that the Amended Complaint fails to allege how Plaintiff's constitutional rights were infringed/implicated by Defendants' alleged conduct. *Id.* at p. 21. As to a claim pursuant to the Fifth Amendment, they argue that it is plainly inapplicable as the Fifth Amendment only protects against infringement by federal actors.  As to the First Amendment, they argue that Plaintiff must allege his rights were infringed by enforcement of a policy or custom of the Sheriff and must also allege facts which establish that he spoke as a private citizen on a matter of public concern—neither of which has been alleged here. *Id.* at pp. 2

A suit against a municipal officer in his official capacity is effectively a suit against the government entity that the officer represents. *Lopez v. Gibson*, 770 F. App'x 982, 991 (11th Cir. 2019) (citing *Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cty.*, 402 F.3d 1092, 1115 (11th Cir. 2005)). Thus, a suit against Defendants in their official capacities, the claim in Count II, is effectively an action against the PCSO, the governmental entity Defendants represent. Additionally, municipal liability exists only when a "policy or custom' of the municipality inflicts the injury." *Cook ex rel. Estate of Tessier*, 402 F.3d at 1116.

22

The First Amendment free speech claim fails as a threshold matter as Plaintiff does not allege what constitutionally protected speech was restrained. Likewise, Plaintiff does not allege sufficient facts to establish a property interest in his job such that the takings claim also fails.

Moreover, the Amended Complaint does not allege that there was an official policy at the PCSO of retaliating against employees who exercised their First Amendment rights or of taking away property from employees who did not comply with their demands. In fact, Plaintiff points to no such allegations in its response. "[A] county is liable only when the county's "official policy" causes a constitutional violation." *Grech v. Clayton Cty., Ga.*, 335 F.3d 1326, 1329 (11th Cir. 2003). Plaintiff may establish a county's policy by identifying either an officially promulgated county policy or an unofficial custom or practice of the county shown through the repeated acts of a final policymaker for the county. *Id.* at 1329 (citing cases). *See also Quinn v. Monroe Cty.*, 330 F.3d 1320, 1325 (11th Cir. 2003) ("Municipal liability may arise with regards to an employment decision, such as a termination, provided that the decisionmaker possesses *final authority* to establish *municipal policy* with respect to the action ordered.") (quotation omitted). Plaintiff's general allegation that Defendants have engaged in a pattern and practice is not sufficient to meet this burden. As such, this claim is also insufficiently pleaded and subject to dismissal for failure to state a claim upon which relief may be granted.

## IV.    CONCLUSION

In sum, the Amended Complaint is subject to dismissal on several grounds. The Amended Complaint is a shotgun pleading. Count I fails to state a claim upon which relief may be granted. Additionally, Defendants are immune from the claim in Count I. And as to Count I, Plaintiff lacks a private right of action under Florida law.  Also, Count II fails to state a claim upon which relief may be granted. The Court further notes that Plaintiff has had ample opportunities to plead sufficient claims against Defendants, as well as guidance in doing so from this Court. [8] As such, leave to amend the claims is not warranted. *Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1358 (11th Cir. 2018). The Complaint is therefore subject to dismissal, with prejudice.

Accordingly, it is hereby **ORDERED**:

1. Defendants' Dispositive Motion to Dismiss Plaintiff's Amended Complaint [Doc. 18] is GRANTED.

2. The Amended Complaint is DISMISSED [16], with prejudice.

3. The Clerk is directed to enter a judgment in favor of Defendants Christopher Nocco, Jeffrey Harrington, Michael Farrantelli, Stacy Jenkins, and Ed Beckman and against Plaintiff Dean Mariani.

4.  The Clerk is further directed to terminate all pending motions and close this case.

---

[8] Plaintiff had several opportunities to state claims against Defendants before his claims were severed and has had an additional opportunity since then.

**DONE AND ORDERED** in Tampa, Florida on March 29, 2022.

Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record and Unrepresented Parties, if any